347 A.2d 677

**In re ADOPTION OF Edward McClellan ORWICK, Jr., a minor.**

**Appeal of Edward McClellan ORWICK, Sr.**

Supreme Court of Pennsylvania.

Argued June 26, 1975.

Decided Nov. 26, 1975.

550

Donald K. Joseph, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Richard A. Behrens, Patterson, Evey, Routch & Black, Hollidaysburg, for appellant.

Amos Davis, Altoona, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

Appellees, Louis and Leann Shank, husband and wife, petitioned the Court of Common Pleas, Orphans' Court Division, of Blair County to adopt as their heir-at-law Edward McClellan Orwick, Jr., a child born to Leann Shank, formerly Leann Orwick, when she was married to appellant, Edward McClellan Orwick, Sr. The petition filed February 21, 1974, alleged that appellant had abandoned his son within the meaning of Section 311(1) of the 1970 Adoption Act [1] and that, therefore, an involuntary termination of appellant's parental rights was in order. After a hearing on March 25, 1974, at which the three interested parties testified and were cross-examined, the lower court entered a decree terminating the natural father's parental rights and granting the appellees' petition for adoption. Exceptions were taken to the decree and briefs were submitted on September 26, 1974.

1. Act of July 24, 1970, P.L. 620, § 311, 1 P.S. § 311(1) (Supp.1973).

552

The court in an opinion overruled the exceptions and re-affirmed the decree permitting the adoption. This direct appeal followed.[2]

Appellant contends that the evidence is insufficient to clearly establish by a preponderance that he "has refused or failed to perform parental duties" for a period of six months and that, therefore, the granting of the petition below was erroneous.[3] Since we find the evidence was sufficient to establish that appellant did fail to perform his parental duties for a period in excess of six months and that the involuntary termination and adoption were warranted by a preponderance of said evidence, we must affirm.[4]

The facts of the case follow. Appellant, Edward McClellan Orwick, Sr., and Leann Shank were married in June 1968. A son, Edward, Jr., was born of this marriage on October 17, 1968. During the latter part of 1969 the couple experienced marital difficulties and fi-

2. Pursuant to Appellate Court Jurisdiction Act, July 31, 1970, P.L. 673, 17 P.S. § 211.202(3) (Supp. 1974–75).

3. The Adoption Act of July 24, 1970, P.L. 620, § 311, 1 P.S. § 311 (Supp.1973), provides:
   "§ 311.   Grounds for involuntary termination
   The rights of a parent in regard to a child may be terminated after a petition filed pursuant to section 312, and a hearing held pursuant to section 313, on the ground that:
   (1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties   .   .   . ."

4. Appellant also argues that he did not evidence a "settled purpose" of relinquishing his parental rights and that this renders an involuntary termination and adoption impermissible. This is incorrect. Although a "settled purpose" of abandoning a child was formerly required before an involuntary termination of one's rights was in order, the 1970 Adoption Act eliminated that as an essential requirement and today an adoption may be permitted under the second clause of Section 311(1) *without any proof of an intent to abandon. In Re. Adoption of Mahlon Nichelle McCray*, 460 Pa. 210, 331 A.2d 652 (1975); *Appeal of Diane B.*, 456 Pa. 429, 321 A.2d 618 (1974). In any event, since the evidence in this case spoke solely to the second clause of Section 311(1), this argument will not be discussed further.

nally separated in November 1969. At the time of separation a voluntary support agreement was entered into with the approval of the court, setting payment at $50.00 per month and granting visitation rights. The couple was divorced on July 7, 1971. Appellant's last payment under the 1969 support order was made on September 6, 1972, at which time he was $940.00 in arrears.[5] On December 9, 1971, Leann Shank remarried. Prior to this second marriage appellant made regular visits to his son. During that time, for the most part, appellant lived only a short walk from his son. After Leann Shank's second marriage at the end of 1971 appellant's visits with his son became less regular. The Shanks moved from the immediate area two months after their marriage to the town of Bellwood, Pennsylvania.

From February 1972 until March 25, 1974, appellant was not in his child's company. Appellant testified that after the Shanks had moved he called a "a half-dozen" times between February and May of 1972 in an attempt to take his son for the weekend.[6] Leann Shank refused to permit appellant to take the child from her new home although she did tell appellant that he was welcome to visit his son at her home. Leann Shank's reluctance to let appellant take Edward, Jr., away from his home seemed to have a reasonable basis in fact.[7] Appellant

5. At the time of the hearing in this case, March 25, 1974, appellant was $2,500 in arrears on the 1969 support order. In addition, Leann Shank testified that as a result of appellant's lapse in support payments, she and Edward, Jr., had to go on public assistance for the year prior to Leann Shank's second marriage in December of 1971.

6. Leann Shank testified he only called on two occasions during that period. In any event, the evidence is undisputed that no attempt or even a further request to visit with Edward, Jr., was ever made after May 1972, twenty-two months prior to the adoption hearing.

7. The refusals to let Edward, Jr., leave his home were the result of appellant's neglect on the last two occasions when he did take Edward, Jr., away from his home. First, in early January 1972 Edward, Jr., was returned home by a relative on foot without a coat and hat, without the knowledge of his father. Second, on

did send a Christmas present with a relative in December, 1972, which Leann Shank returned with the message that appellant should deliver the gift in person. The gift was never redelivered. In addition, on the child's fifth birthday in October 1973, a card was sent and for Christmas 1973 a card and a United States Savings Bond were sent. These sporadic remembrances constitute the sum total of appellant's efforts to maintain a parental relationship with his child over the twenty-six months prior to the hearing in this case.

Our case law dealing with involuntary termination of parental rights has long recognized that:

"Parental rights may not be preserved by complete indifference to the daily needs of a child or by merely waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities (while others adequately provide the child with her immediate and continuing physical and emotional needs). The parental obligation is a positive duty and requires affirmative performance which may not be delayed beyond the statutory period by the parent if the parental right is not to be forfeited."

*In Re Smith's Adoption*, 412 Pa. 501, 505, 194 A.2d 919, 922 (1963). The *Smith* case, although decided prior to the enactment of the present Adoption Act, remains valid law with regard to what is recognized as performance of the parental duty. *See In Re Adoption of Mahlon Nichelle McCray*, 460 Pa. 210, 331 A.2d 652 (1975); *Appeal of Diane B.*, 456 Pa. 429, 321 A.2d 618 (1974); *In Re Adoption of Jagodzinski*, 444 Pa. 511, 281 A.2d 868 (1971).

January 31, 1972, the last time Edward, Jr., was permitted to go with his father he was returned again by a relative and this time with his clothing soaked with gasoline. Appellant confirmed this testimony while he was on the stand.

■  Where, as in the instant case, the evidence clearly establishes that the parent has failed to perform his affirmative parental duties for a period in excess of six months, this Court then must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination of said parent's parental rights and the adoption. *In Re Adoption of McAhren*, 460 Pa. 63, 331 A.2d 419 (1975); *Sarver Adoption Case*, 444 Pa. 507, 281 A.2d 890 (1971); *Jacono Adoption Case*, 426 Pa. 98, 231 A.2d 295 (1967). In deciding this sensitive question, this Court is mindful of the irreversible nature and serious emotional impact which necessarily follow an involuntary termination of parental rights.

■■  Here, appellant throughout the period under consideration was employed as a truck driver.[8]  Despite his fairly regular income he failed to make his monthly payments of support almost from the inception of the order entered in 1969.  His wife and child, as a result of his neglect, were compelled to seek public assistance during 1971.  His frequent visits with his son prior to Leann Shank's second marriage, it seems, were the result of the close proximity between his parents' home and garage (where appellant lived and often worked) and his son's residence rather than any particular desire to be a parent.  In any event, for a period in excess of twenty-two months just prior to the hearing in this case, appellant made no affirmative effort to see his son.  He explains by saying that he felt his failure to support his son would bring the matter of his visitation rights before a court.  We find this explanation inadequate.  It does not demonstrate a "reasonable firmness 'in declining to yield to obstacles' . . . . *See In Re: Adoption of J*

8.  According to his testimony appellant's periods of employment were irregular and his earnings varied between $70 and $250 per week.

*R F*, 27 Somerset L.J. at 304," which the law requires as an adjunct to the affirmative parental duty. *In Re Adoption of Mahlon Nichelle McCray*, 460 Pa. at 217, 331 A.2d at 655 (1975). Further, it should be noted that appellant was never forbidden to see his son but was only told that he could not remove the child from his home. We recognize that this arrangement placed appellant in a very difficult situation but we also recognize that his failure to properly care for his son on two previous occasions [9] was a substantial factor in causing Leann Shank to enact this requirement. Our reading of the record in this case demonstrates that appellant, if not for appellees' filing of a petition for adoption of Edward, Jr., may never have insisted upon seeing his son again.

In his brief appellant relies heavily on our decision in *In Re Adoption of McAhren*, 460 Pa. 63, 331 A.2d 419 (1975), stating that the facts in the instant case so closely resemble those in *McAhren* that this Court must necessarily deny the present petition. We find his interpretation of *McAhren* to be incorrect. Unlike the present appellant, Mr. McAhren had consistently supported his children under a support order for two years. Mr. McAhren did not stop paying support until his former wife refused him his visitation rights for the second time. Even then he put the payments in escrow as evidenced by the County Court's records. His lapse in support only lasted six months. In addition, Mr. McAhren had "continually persisted" in attempting to communicate, 460 Pa. at 72, 331 A.2d at 423, and the evidence indicated that one year preceding the filing of the involuntary adoption petition there involved, he had filed a habeas corpus action to enforce his visitation rights. That petition led to the resumption of his visitation privileges. The totality of circumstances revealed that Mr. McAhren wanted to remain a positive force in his children's lives and was being thwarted in

9. *See* footnote 7, *supra.*

his efforts by his former wife. The present case adduced no such evidence and rather fits more closely into the type of case which this Court distinguished in *McAhren*, that being:

"We are not faced with a case where the parent had sent only one or two greeting cards over the years or where the parent has demonstrated an interest in the child only upon initiation of adoption proceedings."

460 Pa. at 72, 331 A.2d at 423. *Compare In Re Adoption of Mahlon Nichelle McCray, supra; Jagodzinski Adoption Case, supra; Wischman Adoption Case,* 428 Pa. 327, 237 A.2d 205 (1968); *In Re: Hookey's Adoption,* 419 Pa. 583, 215 A.2d 860 (1966). In view of the above, we find *McAhren* in accordance with the result reached herein rather than opposed thereto.

Since the evidence clearly establishes that appellant has failed or refused to perform his parental duties for a period in excess of six months and that the adoption is clearly warranted, we find the forfeiture of appellant's parental rights permissible.

Decree affirmed. Each party to bear own costs.