415 A.2d 44

**In re L. A. G.**

**Appeal of M. G. B.**

Supreme Court of Pennsylvania.

Argued March 10, 1980.

Decided May 30, 1980.

Elizabeth L. Cunningham, Clearfield, for appellant.

John Sughrue, Clearfield, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

### OPINION OF THE COURT

O'BRIEN, Justice.

This is an appeal from a decree entered in the Court of Common Pleas of Clearfield County, Orphans' Court Division, ordering the involuntary termination of appellant's parental rights with respect to her minor child, L.A.G.

On November 22, 1978, a petition was filed in the Court of Common Pleas of Clearfield County, Orphans' Court Division, by the Clearfield County Children and Youth Services, appellee herein, seeking the involuntary termination of the parental rights of M.G.B., appellant herein and the child's natural mother, with respect to L.A.G. A hearing was held on the petition on February 15, 1979. On April 5, 1979, a decree nisi was entered granting the petition. Exceptions were filed and argued. On May 31, 1979, the Orphans' Court entered a final decree dismissing appellant's exceptions and terminating her parental rights. Hence this appeal.

The facts are as follows: L.A.G. was born on April 1, 1973, and is the natural daughter of appellant. During 1975 L.A.G. resided with appellant and appellant's boyfriend, now appellant's husband, in Clearfield County, Pennsylvania. In February, 1976, appellant voluntarily placed L.A.G. in the custody of appellee, Clearfield County Children and Youth Services, following an investigation by appellee of reported child abuse. In May, 1976, appellant and her present husband moved to Benton, Marshall County, Kentucky.

From February, 1976 through December, 1977, appellant maintained contact both with appellee and with her daughter: she communicated with appellee concerning L.A.G. on ten occasions, seven telephone calls and three letters, and visited L.A.G. six times. Late in 1977, appellee broached the possibility of placing L.A.G. in a foster home in Kentucky in order to facilitate visitation by appellant and to lay a foundation for the eventual return of custody to her. Appellant refused to entertain such a proposal, insisting that L.A.G. be returned only to her. Appellee advised appellant to engage an attorney should she intend to pursue a claim for custody.

On December 28, 1977, a conference was held with the Orphans' Court to determine the future of L.A.G.; appellant was present and was represented. At the conference appellant indicated her desire to regain custody of L.A.G.; she was informed that both she and her husband would be

required to receive psychological counseling regarding their duties and responsibilities toward their children, and both were given six months to obtain such counseling.[1] Also on December 28, 1977, appellant visited with L.A.G. for approximately one hour.

From December 28, 1977, until the filing of the instant petition on November 22, 1978, appellant had had no contact and made no communication with either appellee or her daughter, L.A.G. Appellant has made no attempt to undergo the counseling ordered by the Orphans' Court. Although represented by counsel, appellant has not personally or by her attorney, made any claim for custody; nor has she inquired after the welfare of her child.

On January 7, March 10, April 18, May 22 and July 14, 1978, appellee wrote to appellant for information concerning her desire to regain custody of L.A.G. No reply was made to any of the letters, although the last four were by certified mail and were receipted for by appellant. During this eleven-month period, no support was provided for L.A.G. by appellant.

Section 311 of the Adoption Act provides as follows: "§ 311. Grounds for involuntary termination. The rights of a parent in regard to a child may be terminated . . on the ground that:

"(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties." Act of July 24, 1970, P.L. 620, No. 208, art. III, § 311, 1 P.S. 311.

We have held that parental rights may be terminated on either of the bases outlined in the statute, that is, where the parent has evidenced a settled purpose of relinquishing parental claim to a child, or where a parent has refused or failed to perform parental duties. *Matter of Adoption of David C.*, 479 Pa. 1, 387 A.2d 804 (1978). On the record

1. Appellant's husband had been placed on Accelerated Rehabilitative Disposition as a result of his abuse of appellant's other child.

before it the Orphans' Court concluded appellant had refused or failed to perform her parental duties for a period of at least six months, and granted the petition.

On appeal appellant assails the sufficiency of the evidence to support the decree.

■ Our standard of review in cases of involuntary termination of parental rights is well settled: we will not reverse a decree of the Orphans' Court if the decree is supported by competent evidence. *In re Adoption of Baby Boy P.*, 479 Pa. 138, 387 A.2d 873 (1978). With that narrow standard of review in mind, we turn to appellant's argument.

Appellant's single argument raises, essentially, three specific claims. First, appellant asserts the record does not support a finding that she evidenced a settled purpose of relinquishing parental claim to her child. Since the Orphans' Court made no such finding, appellant's argument in this regard is irrelevant.

■ Second, appellant argues the record does not support a finding that she failed or refused to perform her parental duties. The evidence adduced at the hearing, recounted above and uncontradicted by appellant, clearly supports the determination of the Orphans' Court. Appellant's argument to the contrary is without merit.

■ Finally, appellant claims the Orphans' Court failed to adequately weigh the totality of the circumstances surrounding her conduct. Appellant relies upon *In re Adoption of P.*, 475 Pa. 197, 380 A.2d 311 (1977). It is true, as appellant argues, that:

"Where . . . the evidence clearly establishes that the parent has failed to perform his affirmative parental duties for a period in excess of six months, this Court then must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of the circumstances, clearly warrants permitting the involuntary termination . . . ."

*In re Adoption of Orwick,* 464 Pa. 549, 347 A.2d 677 (1975); quoted in *In re Adoption of P., supra,* 475 Pa. at 205–206, 380 A.2d 311.

Instantly, appellant assigns her failure to maintain any contact with her daughter for the pertinent eleven-month period to three factors: the seven hundred fifty mile distance between the two; financial constraints; and her frustration with appellee, Children and Youth Services.

The record indicates, however, that appellant's attorney prepared a custody petition which appellant refused to sign; that appellant made no effort to undergo the counseling which she had been told would facilitate the acquisition of custody; that five letters from appellee concerning the eventual transfer of custody were unanswered; and that during the period of alleged financial hardship the income of appellant and her husband was $23,000 per year.[2]

We have often held that:

"Parenthood is not . . . a mere biological status, or passive state of mind which claims and declines to relinquish ownership of the child. It is an active occupation, calling for constant affirmative demonstration of parental love, protection and concern . . . [A parent] must exert himself to take and maintain a place of importance in the child's life . . . ." *Appeal of Diane B.,* 456 Pa. 429, 433, 321 A.2d 618, 620 (1974).

█ In light of our well-settled standard of review, and in view of the lamentable catalogue of parental indifference disclosed by the instant record, we cannot say the Orphans' Court failed to adequately weigh or properly pass upon the totality of appellant's circumstances.

Decree of the Orphans' Court affirmed. Each party to pay own costs.

2. Appellant's argument that in these inflationary times her income is not what it seems is ludicrous, pitiful and persuades us no more than it did the Orphans' Court.