452 A.2d 1025

**In the Matter of the ADOPTION OF L.M.C. and M.B.C.C.**

**Appeal of S.L.P.C.**

Superior Court of Pennsylvania.

Argued Nov. 9, 1981.

Filed Oct. 8, 1982.

Reargument Denied Dec. 17, 1982.

Petition for Allowance of Appeal Granted March 25, 1983.

38

Melvin Toran, Erie, for appellant.
William Dopierala, Erie, for participating party.

Before BECK, JOHNSON and POPOVICH, JJ.

JOHNSON, Judge:

This is an appeal from the Order entered June 8, 1981, involuntarily terminating the parental rights of S.L.P.C. to her children, L.M.C. and M.B.C.C. For the following reasons, we reverse.

The record indicates that L.M.C., born August 9, 1974 and M.B.C.C., born September 10, 1977, were adjudicated dependent on March 20, 1979 and placed in the same foster home. A petition for termination of Appellant's parental rights to these children was filed by Children's Services of Erie County (CSEC) on October 8, 1980. The alleged basis for termination was 1 P.S. § 311(1), (2) and (3) which state:

(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties; or

(2) The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the conditions and cause of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent; or

(3) The parent is the presumptive but not the natural father of the child. Act of July 24, 1970, P.L. 620, No. 208, Art. III, § 311, 1 P.S. § 311.

The lower court, by Order dated April 2, 1981, terminated Appellant's parental rights relying on subsection (1), stating that Appellant, "by conduct which continued for a period in excess of six (6) months has evidenced a settled purpose of relinquishing parental claim to the children or has refused and failed to perform parental duties[.]"[1]

---

1. We note, with disapproval, that the Petition for Involuntary Termination of Parental Rights filed with the orphans' court on October 8, 1980 is a "form petition" (Form A–4) containing a large number of words and phrases which have been struck through with typewriting. The decree attached to the Petition also contains whole sections which have been crossed out, both with blue and black ink. An

After denial of exceptions, the lower court entered a final order terminating Appellant's rights on June 8, 1981, along with a three page opinion.

■ Appellant alleges that neither of the provisions found in § 311(1) were supported by substantial evidence and that, in any event, no continuous six-month period is evident from the facts.

We are mindful of the recent U.S. Supreme Court opinion in *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) holding that termination of parental rights requires, at a minimum, clear and convincing evidence. However, because of our determination in the instant case, we need not discuss the applicability of the holding in *Santosky* at this time.

The record indicates that no six-month period exists in this case.[2] Apparently, the six-month period used as the grounds for termination commenced after Appellant's visit with the children on January 15, 1980. CSEC was on strike in January and February, although supervisory personnel were receiving telephone calls. Appellant next contacted CSEC on March 17, giving the Agency her new address. On March 18, Appellant cancelled an appointment with her caseworker and on April 21, she again called CSEC to inform them of yet another new address. Appellant cancelled an appointment set for May 6, stating that she was ill.

examination does not permit any conclusion as to whether any, some or all of these deletions and amendment(s) were made by counsel for CSEC, the lower court, or some other party. The Petition does not contain all of the allegations required by Supreme Court Orphans' Court Rule 15.4(a). We would submit that the demanding standards of the Adoption Act, the strong policy of restraining from interfering with the family enunciated both by our Legislature and our courts, and the need for adequate review both by the orphans' and appellate courts require a higher standard of work product than presented here. Cf. *In Re William L.,* 477 Pa. 322, 328–35, 383 A.2d 1228, 1231–34 (1978), *U.S. cert. denied sub nom., Lehman v. Lycoming County Children's Services, et al.,* 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978).

**2.** We note that the lower court failed to specify what six-month period it based its decision on.

On May 9, 1980, Appellant's caseworker transferred the case to a second caseworker, who did not receive Appellant's case until June 9, 1980. In the meantime, a court order was entered on June 2, 1980, ordering Appellant to cooperate with the treatment plan outlined by the court by the orders of April 4, 1979, which required Appellant to obtain adequate housing, cooperate with the BVR and WIN[3] programs, cooperate with a psychological evaluation, and cooperate with caseworker counseling.[4] The June 2, 1980 order further ordered that if within sixty days Appellant had not shown an effort to stabilize her life and work toward the return of her children, the agency was to file a termination petition.

After the scheduling and cancellation of visits, Appellant visited with L.M.C.[5] on July 7, 1980. Appellant visited with both children on August 7, 1980.[6]

It is clear from these facts that as to L.M.C., no six-month period elapsed, as visits took place on January 15 and July 7, 1980. Although six months did elapse in regard to M.B.C.C., during three of the six months, CSEC was either on strike or did not have a caseworker assigned to Appellant. Also, absent any evidence as to why M.B.C.C. was not taken to the agency for the July 7, 1980 visit, we are unprepared to conclude that Appellant did not, in fact, desire or request visitation with M.B.C.C. at that time. We therefore find that, under these specific circumstances, no *continuous* six-month period elapsed as required by § 311(1), in regard to M.B.C.C.

3. BVR refers to the Bureau of Vocational Rehabilitation; WIN refers to a work incentive program for the unemployed.

4. None of these orders have been made part of the record in the instant case. The orders of April 4 appear as an Appendix to Appellant's brief and the order of June 2 was read into the record at the hearing on April 2, 1981 at page 21.

5. No reason is forwarded as to why only one child was brought to the agency for Appellant's visit.

6. Appellant requested visitation on July 22, 1980, but the visit was scheduled for August 7 due to the caseworker's vacation.

The lower court found that Appellant had evidenced a settled purpose of relinquishing parental claim to the children or refused and failed to perform parental duties.[7] Concerning relinquishment of a parental claim:

A "settled purpose" to relinquish parental claims requires a deliberate decision by the parent to terminate the parental relationship, and the parent must persist in that determination throughout the six-month period. [In re Adoption of Baby Girl] Fleming [471 Pa. 73, 369 A.2d 1200] supra; [In re Adoption of] Farabelli, supra. Thus, this Court has required an " 'affirmative indication of a positive intent,' " see [In re Adoption of] McAhren, supra, 460 Pa. [63] at 70, 331 A.2d [419] at 423, as well as a "finality of purpose," see Wolfe Adoption Case, 454 Pa. 550, 554, 312 A.2d 793 (1973), before sustaining a conclusion of a "settled purpose." Moreover, any action by the parent within the six-month period inconsistent with such "settled purpose" will preclude an involuntary termination of that parent's rights.

In re Adoption of R.W.B., 485 Pa. 168, 174, 401 A.2d 347, 350 (1979). Also, the question of whether a parent has evidenced a settled purpose of relinquishing parental claim must be analyzed in relation to the particular circumstances of the case. In re Adoption of M.M., 492 Pa. 457, 424 A.2d 1280 (1981).

Appellant persisted, during the period from January to August, 1980, in her requests for the return of the children, as well as her calls to CSEC to inform them of her new addresses. Also, a request for a visit was made on June 25, 1980, albeit cancelled by Appellant on June 27. Upon a review of the record, we discern no affirmative indication of a positive intent of a "settled purpose", as the record indicates numerous other visits between August 1979 and October of 1980.

---

7. We note, with disapproval, the lower court's non-specificity in using the conjunctive "or" in relation to the separate grounds for termination found in section 311(1).

The lower court also raised the alternative of Appellant's refusal *and* failure to perform her parental duties as an alternate ground for termination. The basis for termination on this ground is the alleged failure of Appellant to follow through with the court ordered treatment plan, as discussed in the orders of April 4, 1979 and June 2, 1980, supra.

Appellant did comply with the psychological evaluation and moved numerous times in an attempt to secure adequate housing. Appellant's second caseworker made visits in July and August of 1980 to Appellant's residence and found it to be in compliance with the court order.

Concerning Appellant's failure to involve herself in the BVR and WIN programs until after the filing of the termination petition, Appellant claimed that she had severe problems with her teeth which were not remedied until sometime after July of 1980. The second caseworker also testified to Appellant's failure to follow through with the mental health counseling program. This program was never made a part of either court order involving treatment plans. Also, the mental health counseling, as recommended to Appellant on August 13, 1980, was deemed unnecessary by Appellant on August 15, as she was no longer severely depressed.

Appellant had previously admitted, to her caseworker, problems with alcohol and drug abuse, as well as problems in dealing with her children. Appellant was also unemployed and receiving public assistance prior to the filing of the termination petition.

In the instant case, we have determined that no six month period existed in relation to Appellant's failure and refusal to perform parental duties. However, even if a six month period had been proven, that fact alone will not support a determination of failure to perform parental duties where the totality of the circumstances, including evidence of the parent's individual circumstances and any explanation offered by her, does not warrant termination of her rights. *In re Adoption of J.A.B.,* 487 Pa. 79, 408 A.2d 1363 (1979). A finding of abandonment will not be predicat-

ed on parental conduct which is reasonably explained or which resulted from circumstances beyond the parent's control; it may result only when a parent has failed to utilize all available resources to preserve the parental relationship. *In re Burns,* 474 Pa. 615, 379 A.2d 535 (1977). Performance of parental obligations must be measured in light of what would be expected of an individual in circumstances in which the parent under examination finds herself. *In re Adoption of B.D.S.,* 494 Pa. 171, 431 A.2d 203 (1981).

Despite the burden of problems Appellant has faced she, at the time of the hearing on the petition, was currently attending mental health counseling, had signed up for the WIN program and was working in a cafe. We cannot say that, under these facts, Appellant has either evidenced a settled purpose of relinquishing parental rights or has refused and failed to perform her parental duties.

The Order entered June 8, 1981 is reversed.

BECK, J., concurs in the result.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

I must dissent from the majority's decision today which concludes that the evidence was insufficient to establish grounds for the involuntary termination of appellant's parental rights. In doing so, the majority invades the province of the trial court since that court's decision to terminate appellant's parental rights when supported by competent evidence should be sustained on appeal. *In re Burns,* 474 Pa. 615, 379 A.2d 535 (1977).

The majority's view is set forth in the following:

"It is clear from these facts that as to L.M.C., no six-month period elapsed, as visits took place on January 15 and July 7, 1980. Although six months did elapse in regard to M.B.C.C., during three of the six months, CSEC was either on strike or did not have a caseworker assigned to Appellant. Also, absent any evidence as to why M.B. C.C. was not taken to the agency for the July 7, 1980 visit, we are unprepared to conclude that Appellant did not, in

fact, desire or request visitation with M.B.C.C. at that time. We therefore find that, under these specific circumstances, no *continuous* six-month period elapsed as required by § 311, in regard to M.B.C.C." at 1028 (emphasis in original).

When analyzing whether the adjudication of the orphans' court will be disturbed in an involuntary termination proceeding, we must apply the following guidelines:

"The adjudication of the orphans' court will not be disturbed if 'the record is free from legal error and . . . if the chancellor's findings are supported by competent and adequate evidence, and are not predicated upon capricious disbelief of competent and credible evidence.' *Cohen Will,* 445 Pa. 549, 550, 284 A.2d 754, 755 (1971); *Holtz Will,* 422 Pa. 540, 544, 222 A.2d 885, 888 (1966); *Hunter Will,* 416 Pa. 127, 136, 205 A.2d 97, 103 (1964).

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. *In re Adoption of Orwick,* 464 Pa. 549, 347 A.2d 677 (1976); *In re Adoption of Mahlon Nichelle McCray,* [460 Pa. 210, 331 A.2d 652] supra; *Appeal of Diane B.,* 456 Pa. 429, 321 A.2d 618 (1974); *In re Smith's Adoption,* 412 Pa. 501, 194 A.2d 919 (1963). This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. *In re Adoption of Mahlon Nichelle McCray,* supra; *Appeal of Diane B.,* supra; *In re Adoption of Jagodzinski,* 444 Pa. 511, 281 A.2d 868 (1971). Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.' *Appeal of Diane B.,* supra, 456 Pa. at 433, 321 A.2d at 620, quoting *In Re: Adoption of J.R.F.,* 27 Somerset L.J. 298, 304–05 (Pa.C.P.1972).

With these principles in mind, the question whether a parent has failed or refused to perform parental duties must be analyzed in relation to the particular circumstances of the case."

*In Re Burns*, 474 Pa. 615, 379 A.2d at 540.

In the instant case, the majority reasons that because the social worker brought the children to visit appellant on January 15th and also because the social worker brought the elder daughter, L.M.C., to the agency to see appellant on July 7th, appellant performed her parental duties. Under the circumstances of this case, this writer declines to adopt such a confined approach. *Id.*

With respect to the younger daughter, M.B.C.C., the majority concedes that "six months did elapse"; however, the majority again excuses appellant's failure to perform her parental duties because the agency "was either on strike or [the agency] did not have a caseworker assigned to Appellant". Slip Opinion at 5. The record, however, shows that the agency did not frustrate appellant's attempts to perform during these times. In fact, during the strike, the agency's supervisors resumed the duties of the caseworkers. Ironically enough, a visit was arranged during the first part of the strike, on January 15th, and appellant did speak to a supervisor when she notified the Agency that she had moved. Therefore, on these facts, the strike is not an excuse for appellant's failure to perform her parental duties.

Similarly, the majority superimposes a rule in adoption cases which states that a parent's failure to perform is negated by the fact that a caseworker is not specifically assigned to that parent's case. In this case, appellant cancelled an appointment for May 6th stating that she was ill. Then, on May 9, 1980, appellant's caseworker transferred the case to a second caseworker, who did not receive appellant's case until June 9, 1980. Nonetheless, appellant could have called if she had wanted to visit with the children. In other cases, our courts have required as much:

"Parental duty does not require the impossible, but may encompass that which is difficult and demanding. *A*

*parent may not yield to every problem, but must act affirmatively with good faith, interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." In re Burns,* 474 Pa. at 626, 379 A.2d at 541. (Emphasis added) (Citations omitted).

As a result, this writer refuses to require much less from appellant.

Although we may take into consideration a parent's personal crisis when determining whether that parent has failed to perform his or her parental duties, such an allegation is not dispositive. Rather, we have applied the following guidelines:

"A period of asserted hardship does not completely relieve a person of parental responsibilities. Compare *In re Adoption of M.T.T.,* [467 Pa. 88, 354 A.2d 564] *supra,* (imprisoned father utilized available resources thereby precluding involuntary termination of parental rights) with *Adoption of McCray,* 460 Pa. 210, 331 A.2d 652 (1975) (parental rights of imprisoned father terminated for failure to take advantage of available resources.) *The pertinent inquiry is whether the parent has utilized those resources at his or her command in establishing a close relationship with the child.* Where the parent does not exercise reasonable firmness 'in deciding to yield to obstacles' his other rights may be forfeited. See *In re: Adoption of J.R.F.,* 27 Somerset L.J. at 304." *Adoption of McCray, supra,* 460 Pa., at 217, 331 A.2d at 655. *Matter of Adoption of David C.,* 479 Pa. 1, 10, 387 A.2d 804, 808 (1978) (emphasis added).

First of all, appellant's children were adjudicated dependent in 1979. At that time, the court ordered appellant to obtain adequate housing, cooperate with the Bureau of Vocational Rehabilitation and the WIN programs, and to cooperate with a psychological evaluation and with casework counseling.

From July 5, 1979, until May 9, 1980, appellant had resided at four different addresses (i.e., 516 East 6th Street, 247

East 23rd Street, 44 West 19th Street, and 149 East 23rd). According to the first counsellor, appellant did not do anything to obtain adequate housing and did not develop her job skills or secure employment. N.T. 13.

Appellant told the counsellor that her excuse for not participating in the programs was because "she first wanted to get her teeth removed and get false teeth put in." N.T. 14. However, the counsellor also stated that appellant agreed to cooperate with a psychological evaluation because she was having a drinking problem and "was having a difficult time dealing with the children." N.T. 14. Although appellant did cooperate with the evaluation, she did not follow through with the counseling.

Beginning with June 25th, appellant had a different caseworker, G.M.C. During the next few months, this caseworker discussed the BVR and WIN programs and also discussed the court order. Finally on August 13th, appellant "again discussed the fact that she could not go to BVR and WIN because of her teeth. She had to have that taken care of before she would follow through with anything." N.T. 24. During this conversation, appellant also stated that she was "severely depressed." N.T. 25. The counsellor urged appellant to go to a health center; however, in appellant's opinion, she was not in need of counselling. N.T. 25.

At this time, appellant's housing situation at 215 East 8th Street was described in the following manner:

[The Second Social Worker]

"A The upstairs on the second floor she had a roommate. When you came in the front door, there was a living room. Over off that was another room with a very large doorway. About the size of that doorway there was a bed in there, and we discussed who slept in there. She said her roommate, and there was—there might have been some curtains, I am not too sure, over it or it might have been open. I remember it being all open at that point. There was a bedroom, I think that [appellant] slept in and there was another room where [appellant] had a dog at that point, and the dog and the puppies were in there.

Q So, there was an extra bedroom there?

A There was a bedroom, yes.

Q Okay, so to your knowledge, then, did [appellant] at that time have adequate housing for the children in terms of space?

A In terms of space, there was an extra bedroom for the children.

Q So, then, to the best of your knowledge at that time, she was complying with the Court Order regarding housing?

A Regarding housing, yes." [1]

N.T. 29–30.

The record shows that the evidence concerning the other aspects of the court order (i.e., the job counselling and casework counselling) were in dispute. The counsellors' testimony established that appellant did not follow through with the programs. Although appellant did not refute the fact that she failed to sign up for the programs previously, she stated at the time of the hearing that she had signed up for WIN and also had applied to sit for an examination to qualify for a nurse's training program. N.T. 33–34. Additionally, appellant stated that, for the past two weeks, she had been employed at a local cafe on a part-time basis. N.T. 35. It was on these facts that the trial court concluded that appellant

"failed to cooperate with the Agency in trying to be rehabilitated. It is obvious that she had some interest, but not a deep concern for the children... When the termination Petition was filed she then decided that she thought she wanted the children. She testified that she never expected this to happen so quickly; that is, that the children would be taken away from her. She has had two years to prove herself and this Court cannot see that she

1. On April 2, 1981, the date of the hearing, appellant had moved. She testified that she was residing at a home leased to the "Laird" family at 927 West 17th. N.T. 47. However, for the purposes of the instant case, the relevant conduct at issue was the six month statutory period which occurred in 1980. See 23 P.S. § 2511. See also In Re J.F., 487 Pa. 115, 408 A.2d 1382 (1979).

should have any more time *to pretend* that she wants to mother the children. A mother must be positive in her desire to raise her children and must not allow her own pleasures in life to come first. Her first obligation is to the children, and this respondent was happy allowing the Agency to bring up these two girls...." Trial Court Opinion at 3–2. (Emphasis added).

It is obvious from the trial court's opinion that it found appellant's testimony about her efforts to rehabilitate to be less than credible. Thus, the trial court's findings will not be disturbed under these circumstances. *In Re D.K.W.,* 490 Pa. 134, 415 A.2d 69 (1980); *In re William L., supra;* see also *In Re L.A.G.,* 490 Pa. 85, 89, 415 A.2d 44, 47 (1980) (The Court rejected appellant's claim that her conduct was not weighed adequately considering the totality of the circumstances.) Additionally, we note that appellant's failure to perform her parental duties resulted directly from circumstances which were the product of her own making since she did not "utilize those resources at .. her command in establishing a close relationship" with her children. *Matter of Adoption of David C.,* 479 Pa. at 10, 387 A.2d at 808.

Hence, I must dissent from the majority's finding that the trial court's decision was not supported by competent evidence.