## Adoption of B.L.W. and W.T.W.

*Richard P. Krill*, for petitioners.
*Arthur M. Wilson*, for respondent.

TERPUTAC, *J.*, April 6, 1983—On May 17, 1982, J.R.L. and D.E.L., his wife, presented to the court their petition to terminate involuntarily the parental rights of W.F.W., the natural father of two children who are the subject of this proc eeding. B.L.W. was born on July 8, 1971, and she is presently 11 years of age; W.T.W., known as W.T. was born on May 20, 1975, and he is presently se ven years of age. Their parents are D.E. and W.F.W., respondent herein. Both B.L.W. and W.T. reside with their mother and her present husband, J.R.L., in North Strabane Township (Canonsburg post office), Washington County, Pa. The natural father, W.F.W., presently unmarried, resides in Texas.

D.E.L. and her former husband, W.F.W., were married in Dallas County, Texas, on November 6, 1970. The two children, B.L.W. and W.T., were the only offspring born to this union. On June 1, 1976, the natural parents were divorced in Texas, at which time the court awarded custody of the children to their mother with reasonable visitation rights to the father. In addition, W.F.W. was ordered to pay child support in the amount of $75 per month for each. After the divorce, D.E.L. married J.R.L. in 1977. Living for a short time in Texas, Mr. and Mrs. L. then moved to Somerville, NJ, in September 1978 at the behest of J.R.L.'s employer. In October of 1979, Mr. and Mrs. L. moved to their present residence in Pennsylvania. D.E.L.'s age is 32 and the age of the natural father is 31.

Mr. and Mrs. L. reside with the children in a comfortable, modern townhouse near Canonsburg. The apartment has an outside play area, is decorative, and has three bedrooms.

Petitioners aver that they have met their burden of proof by clear and convincing evidence, Santosky v. Kramer, _____ U.S. _____, 102 S.Ct. 1388, 71 L.Ed. 2d 599 (1982), In re Adoption of L.M.C. and M.B.C.C., _____ Pa. Super. _____, 452 A. 2d 1025 (1982), so that the court should terminate the rights of W.F.W. to his children under the provisions of the Adoption Act of 1980, Section 2511(a)(1) and (2), 23 Pa.C.S.A. Sec. 2511(a)(1) and (2), which provide:

(1) The parent by conduct continuing for a period of at last six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapcity, abuse, neglect or refusal cannot or will not be remedied by the parent.

After a careful review of the record, we conclude that the rights of the natural father, W.F.W., should be terminated for the reasons hereinafter set forth. In so doing, we have resolved the factors of credibility and weight of the evidence in favor of the petitioners.

At the order of the court, a caseworker for the Washington County Children and Youth Social Service Agency conducted a home evaluation of the L. residence. Observing the home and the family interaction, the caseworker reported very favorably

to the court in support of petitioners. The children told the caseworker they were in favor of being adopted by their "Dad." There is love and understanding in the family, and the needs and welfare of the children inured in favor of petitioners.

Mr. and Mrs. L. were married in Dallas County, Texas, on April 1, 1977. From September of 1978 to October of 1979, they resided in Somerville, N.J.; from October, 1979, to the present, they have resided in Washington County, Pa. Since her graduation from high school in Texas, D.E.L. has been employed by Bell Telephone Company. At the present she is a computer operator commanding a substantial salary. Mr. L. had a good position with Honeywell, Inc., until he was laid off because of economic conditions last September. He intends to adopt both children. We find there is a strong religious influence in the family which is beneficial to the parents and the children.

From June 1, 1976, the date of the divorce between D.E.L. and respondent, through a portion of 1978, respondent would call and make arrangements for visitations with the children. In September of 1978 when Mr. L. got a job in New Jersey, the family moved to Somerville. D.E.L. called W.F.W. and provided him with their new address. But when she asked him for his address, he refused to tell her, advising her to write to his mother or father (who were separated but D.E.L. knew where his mother lived). W.F.W. refused to tell D.E.L. where he was working. Unfortunately, because of his lethargy and immaturity, W.F.W. has held and lost no less than ten positions of employment in the past decade. Again in October of 1979, Mr. L. was transferred and the family moved to Washington County, Pa. When D.E.L. testified before the court

on September 1, 1982, even at that time she did not know W.F.W.'s place of residence.

In August of 1978, prior to the move to New Jersey by Mr. and Mrs. L., respondent had a visitation with the children. While the L. family resided in New Jersey, the natural father called every month or so about the children. The last call by W.F.W. occurred in the spring of 1979. However, when the L. family moved to Pennsylvania from New Jersey, D.E.L. failed to notify W.F.W. Except for several visitations which the court has ordered since the inception of the instant petition for termination, the natural father has visited with the children only on one occasion since 1977. That visitation occurred in December, 1980. At that time Mr. and Mrs. L. made a holiday visit to her mother's place in Wilmer, Texas. Without notice W.F.W. came to the house and asked for visitation rights with the children. D.E.L. acceded. W.F.W. visited with the children for about three hours.

Dr. Neil D. Rosenblum, a clinical child psychologist, testified on behalf of the L. family. After several interviews he made evaluations of the children. He stated this was a normal, happy family, that the family seemed attached to both Mr. and Mrs. L., and that the children view Mr. L. as their psychological father. Based on the cohesion in the family and the strong psychological attachments, Dr. Rosenblum was of the opinion that the proposed adoption would be in the best interest of the children. The stability and continuity offered by the L. parents tend to support their position.

In spite of his protestations that he has been a concerned father, W.F.W. knew D.E.L.'s correct address at least in December 1980, and again in September of 1981 when he saw the correct address on the desk in the office of the District Attorney in

Ellis County, Texas. Petitioner's Exhibit No. 8. From September 22, 1981, to May 17, 1982 (the date of the presentation of the petition to terminate), the natural father did not write, mailed no gifts, and in fact did nothing to assert his parental rights. Upon cross examination, he was unable to explain his dereliction. In addition, we accord credibility to the testimony of D.E.L. that her correct mailing address in Canonsburg was provided to W.F.W. during the December, 1980, visitation in Texas. From the latter part of January, 1982, until March of 1982, W.F.W. was working in Columbus, Ohio, which is approximately 163 miles from Canonsburg. Yet the only attempt he made to get in touch with the children was a phone call to the local operator to get D.E.L.'s telephone number. Since the number was unlisted, the call could not be completed. When he was asked why he did not mail cards or letters, he answered: "I cannot completely explain it." When he was asked about gifts for the children, he responded: "As for gifts, I don't know." Id.

The matter of support for the children is another clear indication of lack of concern. In 1979, W.F.W. provided support in the amount of $500, paid through the courts in Texas, and an additional $100 by direct check; in 1980, he paid no support; in 1981, the total was $100; and in 1982, after notice of the termination petition, he paid $200. W.F.W. testified that he thought the children were being adequately supported. Again, when he was asked why did he not communicate with the children, he replied: "I don't have no true explanation for it." Although he protested he did not have D.E.L.'s address in Canonsburg, Pa., after the move in October of 1979, and although there may be a question whether or not he had the address in December of

1980, when he was asked why he did not communicate with the children when he admitted he knew the address in September 1981, and why did he not act differently at that point, he said: "I don't know how to explain that one."

In the presence of counsel, the court interrogated the children. Although W.T. could not remember his father, he thought he would like to visit. According to his counsel, the child is somewhat ambivalent, but either way would be satisfactory. B.L.W. is adamant that she does not wish to visit any more with him. The court-ordered visitations went well, according to counsel for the children. However, B.L.W. refused to visit with her father during the recess of the hearing on February 16, 1983. Counsel for the children was of the opinion that for the best needs and welfare of the children, the parental rights of the natural father should be terminated.

In justification of his apparent lack of concern and failure to communicate with the children, W.F.W. has asserted that D.E.L. failed to advise him of the L. family move to Pennsylvania in October 1979, that she should have accorded his visitation rights while the L. family resided in New Jersey, that she had an unlisted telephone number in Pennsylvania, and that she knew how to get in touch with him through his mother in Palmer, Texas. Our law recognizes there may be situations in which the custodial parent may raise barriers to impede contact of the non-custodial parent with the children, and that when the absence of communication is the result of deliberate conduct or manipulation by the custodian, the parental rights may not be terminated. In re D.J.Y., 487 Pa. 125, 408 A. 2d 1387 (1979). This defense might be applicable if W.F.W. had exercised reasonable efforts to

communicate with the children and made a good faith effort to support them. We find he has failed and refused to do so.

These considerations must be weighed against the obligation of the non-custodial parent to make an affirmative effort to exert himself to take a place of importance in the child's life (citation omitted). There is, therefore, a need for the record to demonstrate that reasonable resolve was reflected in the actions of the parent in question, to overcome those impediments to a relationship with the child which would permit that parent to remain a positive force in the life of the child. In re Adoption of J.S.M., 492 Pa. 313, 317, 24 A. 2d 878, 880 (1981).

Addressing the issue of impediments, we find in spite of D.E.L.'s failure to notify W.F.W. of the new address in Pennsylvania, it was incumbent upon him to make other reasonable efforts, such as driving to the residence of D.E.L.'s parents, only a few miles away, or calling there. However, his assertions of concern are belied by his utter failure to call or write when he knew the exact Canonsburg address in September 1981. Furthermore, contrary to his testimony, we find he knew the address and had access to its correctness when he made the visitation to her parents' home in December 1980. We believe that his lack of effort was in part attributable to his refusal to make steady support payments for the children. The failure of negotiations for the visitation in New Jersey in 1979 is the fault of neither; with the conflict in vacation schedule and school days, the efforts came to naught. Until she decided to seek a termination of W.F.W.'s parental rights in 1982, we find that D.E.L. was willing to extend visitation rights to the natural father. A dramatic change occurred in the

spring of 1982 when W.F.W. must have been convinced that D.E.L. would seek court approval for the termination of his parental rights. Finally at that point he decided to oppose the termination. We believe that except for this important occurrence the natural father would not have responded and that he would have continued to be unconcerned. In re Adoption of R.W.G., 494 Pa. 311, 431 A. 2d 274 (1981). The parent must demonstrate a continuing interest in the child independent of "outside events" as discussed in Matter of Adoption of David C., 479 Pa. 1, 387 A. 2d 804 (1978):

From the time of David's birth to the adoption hearing, nine years later, appellee visited David only three times. Moreover, these visits, occurring at the time of appellee's divorce proceeding, the mother's death and the custody action, *appear not to have been triggered by appellee's interest in his son, but by outside events* necessitating travel to Harrisburg . . . While the geographical distance . . . might excuse the lack of frequent visits, it cannot justify the almost total absence of visits by appellee . . . (Emphasis added.) Id. at 8, 9, 387 A. 2d at 807. For these reasons, we hold that D.E.L. acted properly and did not impede or frustrate visitations and communication.

Under subsection (a)(1) of Section 2511, a parent has an affirmative duty to meet a child's needs for love, protection, guidance and support, and furthermore a mere passive, uninvolved interest in or concern for the child is inadequate. A genuine effort to maintain communication and association with the child is required so that the parent may take and maintain a place of importance in the child's life even if the parent and child are geographically separated. In the Interest of T.S.L., 487

Pa. 245, 409 A. 2d 332 (1979). It is acknowledged that the distances between Texas, New Jersey and Pennsylvania presented major obstacles to W.F.W.; however, in such circumstances the absent parent has an obligation to make special efforts to maintain the relationship:

Since communication and association are essential to the performance of parental duty, the absent parent and his child are at a disadvantage; and if such a parent is to perform his parental duties, even to a more limited extent than when he lived with the family, he must make a special effort to bridge the gulf of geographical separation and take affirmative steps to maintain communication. . . .

In re Adoption of J.R.F., 27 Somerset L.J. 298, 304 (1972). Included within the scope of these principles are an aggregate of duties, such as continuing interest in the welfare of the child, financial obligation, an effort to maintain communication and association with the child, and ultimately exerting himself to take and maintain a place of importance in the life of the youngster. In re Green, 486 Pa. 613, 406 A. 2d 1370 (1979). W.F.W. has done little to assert his parental rights since December 1980. Although he has had financial problems and has been unable to hold steady employment, yet W.F.W. has failed and refused to make and maintain reasonable communication and association with the children. In re Adoption of Y.S., 487 Pa. 99, 408 A. 2d 1373 (1979). "A period of asserted hardship does not completely relieve a person of parental responsibilities." Matter of Adoption of David C., supra at 10, 387 A. 2d at 808. Parental rights will not be preserved while a parent waits for a more suitable financial circumstance or a more convenient time. In re Smith's Adoption,

412 Pa. 501, 505, 194 A. 2d 919, 922 (1963). Moreover, under subsection (a)(2), except for the one visit in December 1980 and parsimonious payments of support, the father has failed to provide essential parental care for the children, from which we may properly infer that he is not able and will not remedy the conditions and causes of the neglect and refusal. Matter of the Adoption of J.S.H., 299 Pa. Super. 90, 445 A. 2d 162 (1982).

Fundamentally, counsel for the father has advanced two basic reasons in his defense of the termination proceedings. First, he has alleged that the mere passage of time for a period of six months is insufficient to terminate rights, and second, that the failure of the court to allow W.F.W. to testify respecting what his counsel in Texas told him to do was error. For the purpose of this opinion, we compute the six months period sufficient for termination commencing on December 28, 1980, which is the time immediately following the Texas visitation.

Generally, the mere lapse of time under subsection (1) is insufficient to cause a termination of parental rights. In re Adoption of R.W.B., 485 Pa. 168, 401 A. 2d 347 (1979). Further, mere inaction or lack of interest in the children are factors which by themselves may not be adequate grounds for termination. Matter of Adoption of Barnett, _____ Pa. Super. _____, 450 A. 2d 1356 (1982). The father seems to imply that even though he had no explanations for his palpable dereliction of duties toward his children, that somehow so long as W.F.W. thought the children were being adequately cared for by their mother, such a situation was sufficient to excuse his behavior and to preclude a termination of his parental rights. If this argument were accepted in termination proceedings under Sec.

2511, virtually no termination of parental rights could ever be brought about because in nearly every case either a public agency or the other parent or some relative has adequately cared for the child. In any event we have found there were several six months periods since December of 1980 in which W.F.W. has engaged in a settled purpose of relinquishing his rights and has refused and failed to perform his duties.

The second argument advanced in his brief to the court is to effect that W.F.W. should have been permitted to testify respecting what advice his Texas counsel gave him. Presumably this testimony would tend to excuse or justify his actions in his relationship with his children. In the first place, the statements made out of court by a third person to W.F.W. are within the bounds of general hearsay. Under the circumstances, the father should not be heard to explain dereliction of parental duties upon what someone told him to do or not to do. Commonwealth v. Yost, 478 Pa. 327, 386 A. 2d 956 (1978). The statements of the Texas attorney could only be interpreted in such a manner to prove the truth of the facts asserted. Commonwealth v. Strunk, 256 Pa. Super. 213, 389 A. 2d 1089 (1978). Moreover, during interrogation by the court, W.F.W. had a full and adequate opportunity to explain why he did not send cards, gifts, support payments, or to do the many things a parent should do under those conditions. Instead he admitted he could not explain why he failed to attend to the needs of his children. Consequently, if there was any error, it was harmless error. Capan v. Divine Providence Hospital, 270 Pa. Super. 127, 410 A. 2d 1282 (1979).

Therefore, with the findings of fact in favor of the petitioners, we hold that they have sustained their burden of proof by clear and convincing evidence

under Section 2511 (a)(1) and (2). The attempts of the natural father in justification of his actions and conduct are apocryphal. Justifying his failure to communicate by averring he had no address for the children, W.F.W. admitted on cross examination he had no answers why he failed to send presents and admitted he did not like to write. In attempting to expatiate too much on D.E.L.'s shortcomings, he has failed to demonstrate to the court why he has been palpably remiss in the performance of his duties.

Finally, in giving primary consideration to the needs and welfare of the children under subsection (b) of Section 2511, we find that the petitioners have ably given love, concern, interest, moral and religious teaching and all other amenities to the needs and welfare of the children. In summary, all the prerequisites for involuntary termination of the parental rights of the father have been proved and will so order.

## DECREE NISI

And now, April 6, 1983, the parental rights of W.F.W. to B.L.W. and W.T.W. are hereby involuntarily terminated. Unless exceptions are filed within ten days of notice of this decree nisi, it shall become final.