465 A.2d 21

**In re Involuntary Termination of Parental Rights of Geraldine Mae SANTELIA to Anthony Dino Pellegrino.**

**Appeal of Geraldine Mae SANTELIA.**

Superior Court of Pennsylvania.

Argued March 1, 1983.

Filed Aug. 26, 1983.

Justin K. McCarthy, Bethlehem, for appellant.

William W. Matz, Jr., Bethlehem, for participating party.

Before CERCONE, President Judge, and CAVANAUGH and WIEAND, JJ.

CAVANAUGH, Judge:

This appeal was taken from an order involuntarily terminating the parental rights of appellant Geraldine Mae Santelia to her son. Our scope of review in such cases is limited, *In re Adoption of J.S.M., Jr.*, 492 Pa. 313, 424 A.2d 878 (1981), but our examination of the record in the instant case convinces us that the petitioners failed to establish the existence of grounds for terminating appellant's parental rights and that the lower court abused its discretion in holding to the contrary.[1] The order of the lower court is, therefore, reversed.

The subject of the instant proceedings, Anthony Dino Pellegrino (Dino), was born June 22, 1967. The proceedings

---

**1.** The lower court applied a "preponderance of the evidence" standard in finding that the petitioners had established the existence of grounds for terminating appellant's parental rights. Subsequent to the entry of its order, the United States Supreme Court held that parental rights could not be terminated unless the grounds for doing so were established by at least "clear and convincing" evidence. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). We have held that the clear and convincing evidence standard must be applied to all cases in which appeals had not been exhausted at the time the *Santosky* decision was rendered. *In re Adoption of M.E.T.,* 313 Pa.Super. 316, 459 A.2d 1247 (1983). However, in view of our finding that even the lower standard of "preponderance of the evidence" was not met in the instant case, there is no need to remand for further proceedings. *See In re Adoption of M.E.T., supra,* 313 Pa.Superior Ct. at 323 n. 5, 459 A.2d at 1251, n. 5.

were initiated by Dino's paternal grandparents, appellees herein, who wish to adopt Dino. Dino's mother, appellant herein, was divorced from Dino's father when Dino was a small child. Appellant initially had custody of Dino following the separation but at some point Dino's father regained custody and retained it until his death in June, 1975.[2]

Appellant attempted to regain custody of Dino at the time of his father's death but Dino expressed a desire to live instead with appellees, with whom he had spent much time while in his father's custody. Appellant acquiesced in this arrangement because she felt that it was in the child's best interests not to fight over custody until the trauma of his father's death subsided. Dino has remained with appellees ever since.

Appellees live in Northampton County, about a two hour drive from appellant's home in Philadelphia. Appellant admitted that she did not visit Dino at all during the first year or two after his father's death, although she did apparently maintain contact through phone calls and sent cards and gifts at various times. She did begin to visit Dino at some point between 1976 and 1978. There is absolutely no support in the record for the court's finding of fact that over the entire period of approximately six years from Dino's father's death in 1975 until the hearing on the instant petition in 1981, appellant visited Dino a total of four times; three of those visits occurring in 1978 and one in 1979. (Finding of fact # 9, lower court opinion at 3). On the contrary, even the petitioners-appellees testified that appellant had visited seven or eight times since they had obtained custody of Dino and that three or four of the visits had occurred in 1980 or 1981. It was clearly established that appellant was present at Dino's birthday party in June, 1980 and that she stayed at appellee's home for a weekend in September, 1980. Dino testified that appellant had visited three times in 1980 and two or three times in 1981.

2. There is so much conflicting testimony in the record that it is virtually impossible to determine when Dino's parents separated, when they were divorced, or at what point Dino's father took custody of Dino from appellant.

Appellant testified that she had visited Dino eight times in 1980 alone. This testimony was corroborated by another witness. Appellee Viola Pellegrino (Dino's grandmother) admitted that appellant had been calling Dino several times a month for several years and that she always sent cards and/or gifts at Christmas and on Dino's birthday.

■ The lower court found that appellant had, for a period in excess of six months, refused or failed to perform her parental duties toward Dino and it therefore terminated her parental rights.[3] We do not feel that the record in the instant case can sustain an involuntary termination based on failure or refusal to perform parental duties. We are not faced in this case with a parent who has evidenced an intention to relinquish parental rights or with a parent who has exhibited little or no interest in the welfare of her child. Rather, we are faced with a mother who, though desireous of having custody of her child, determined that it would not be in the child's best interests to try to force him to come to live with her in the face of his expressed desire to live with his grandparents.

As the Pennsylvania Supreme Court stated in *In re Howard*, 468 Pa. 71, 83, 360 A.2d 184, 190 (1976):

> In construing the meaning of the term "parental duties" this Court has noted that a parent has "an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." *In re Adoption of McCray*, 460 Pa. 210, 216, 331 A.2d 652, 655 (1975). *See also In re Adoption of McAhren*, 460 Pa. 63, 71, 331 A.2d 419, 423 (1975). [The Adoption Act] does not, however, require that a parent *personally* take care of a child. "The responsibility of performing parental duties may be met if the parent has made reasonable arrangements for the temporary care of the child." *In re Adoption of Wolfe*, 454 Pa. 550, 557, 312 A.2d 793, 797 (1973).

3.  See 23 Pa.C.S.A. § 2511(a)(1).

*See also In re Adoption of R.W.B.,* 485 Pa. 168, 401 A.2d 347 (1979); *In re Adoption of Farabelli,* 460 Pa. 423, 333 A.2d 846 (1975).

■ Furthermore, even where the evidence in a case does establish that a parent has failed to perform parental duties for a period in excess of six months, such a finding does not, in and of itself, support an order terminating parental rights. Instead, "the Court then must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting involuntary termination of said parent's parental rights.... In deciding this sensitive question, this Court is mindful of the irreversible nature and serious emotional impact which necessarily follow an involuntary termination of parental rights." *In re Adoption of Orwick,* 464 Pa. 549, 555, 347 A.2d 677, 680 (1975). *See also In re Adoption of J.A.B.,* 487 Pa. 79, 408 A.2d 1363 (1979); *Matter of L.M.C.,* 307 Pa.Super. 37, 452 A.2d 1025 (1982).

At the time of Dino's father's death, the parties were faced with the task of providing a new home for Dino. They all acted in what they felt was Dino's best interests. The appellees are certainly to be commended for providing Dino with a good home. We do not feel, however, that appellant should be condemned for failing to take further steps to regain custody of Dino when she was well-aware of appellees' ability and desire to provide for Dino's upbringing and of Dino's desire to live with appellees. She has maintained communication and association with Dino in the hope that he would someday agree to come and live with her. We do not feel that the evidence in this case, "in light of the totality of the circumstances," warrants the involuntary termination of appellant's parental rights at this time. *In re Adoption of Orwick, supra.* If Dino wishes to become the adopted son of his grandparents when he reaches the age of eighteen, the law permits him to do so. *In re Adoption of Sarver,* 444 Pa. 507, 281 A.2d 890 (1971).

418

The order terminating appellant's parental rights is reversed.