664 A.2d 164

**In the Interest of Q.J.R., a Minor.**

**Appeal of D.R.**

Superior Court of Pennsylvania.

Argued June 15, 1995.

Filed Aug. 29, 1995.

Reargument Denied Oct. 27, 1995.

Sylvia Hahn, Scranton, for appellant.

Ronald J. Worobey, Dunmore, (submitted) for appellee.

Before POPOVICH, JOHNSON and HOFFMAN, JJ.

POPOVICH, Judge:

We are asked to review the order of the Court of Common Pleas of Lackawanna County, Orphans' Court Division, terminating the parental rights of the appellant, D.R. We affirm.

The record indicates that the removal of the appellant's three children,[1] the youngest of whom (Q.J.R., born July 16, 1989) is the object of this appeal, by the police from the appellant's household prompted a hearing and resultant order dated July 23, 1990, placing the siblings in the custody of Lackawanna County Children and Youth Services (CYS).

The award of custody to CYS was premised upon the inability of the police to locate the appellant on the day the children were removed from her residence, her usage of drugs

---

1. The two oldest children (Quintin and Quintasia) were fathered by one other than T.J.Y., Q.J.R.'s father.

interfered with her parenting, the children being left with an inappropriate caretaker and dressed inadequately, as well as the appellant not providing a proper supply of food for the children.

Four hearings were held, spanning August of 1990 through February of 1992, at which the CYS caseworker assigned to assist the appellant reported that she was not cooperating, was inconsistent with child visitation, had little understanding of the children's needs or how to care for them.

Further, over the two-year period in which CYS had sought as its goal to reunite the family, the appellant had enrolled in three drug programs, but she failed to complete any. And, when the appellant ceased her visitation of the children in May of 1992, without proffering any reason as to why or her whereabouts, CYS scheduled a hearing for August 7, 1992. At that time, the goal of CYS changed from one of "placement" to "adoption" of Q.J.R. because he needed a permanent living arrangement and his developmental delays (having been born a "crack" baby) addressed.

In January of 1993, CYS filed a petition seeking to terminate involuntarily the parental rights of the appellant to the minor-child, Q.J.R. Four hearings were held (between June 30, 1993, and March 11, 1994) before a Hearing Master entered findings of fact and conclusions of law recommending that termination would serve the "best interests" of the child, and the appellant exhibited a "settled purpose" to relinquish her parental claim for a period of at least six months or failed to perform parental duties for the same period. See 23 Pa.C.S.A. § 2511(a)(1). The appellant's exceptions were denied by the court which adopted the Master's recommendation and terminated the appellant's parental rights to Q.J.R. This appeal followed and raises five issues for our review which, when distilled, argue against the termination order as unwarranted under the particular facts of this case when viewed against the backdrop of the applicable law. We disagree.

In this jurisdiction, to terminate parental rights involuntarily, a petitioner must establish the statutory elements

by at least clear and convincing evidence. *Santosky v. Kramer* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Adoption of Sabrina*, 325 Pa.Super. 17, 472 A.2d 624, 626 (1984). The statutory basis for termination in the present case was 23 Pa.C.S.A. § 2511(a)(1), which provides:

§ 2511. Grounds for involuntary termination

(a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

A "court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). Further, our cases are clear that:

A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.'.

*In re Burns*, 474 Pa. 615, 379, A.2d 535, 540 (1977) (Citations omitted). Therefore, it is not enough to contribute to the support of a child as required by a court order. A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise "reasonable firmness" in resisting obstacles placed in the path of maintaining the parent-child relationship. *In re J.L.Z.*, 492 Pa. 7, 421 A.2d 1064, 1065 (1980); *In re Baby Boy*

*P.*, 333 Pa.Super. 462, 482 A.2d 660, 664 (1984). This means that a parent can no longer claim relief from the responsibility of parenthood due to an inability to fulfill that function. The child, in the meantime, will grow and will need nurturing, care, attention and stability if it is not to suffer irreversible damage from neglect however occasioned. *In re Adoption of Michael J.C.*, 506 Pa. 517, 486 A.2d 371 (1984); *Matter of K.L.P.*, 354 Pa.Super. 241, 511 A.2d 852, 854 (1986).

The appellant would have this Court find that her drug addiction was an impediment to carrying out her parental duties for a period of six months immediately preceding the involuntary termination of her parental rights to Q.J.R. Also, she argues that her individual effort to deal with her drug addiction is reflective of her continuing desire to be a party of Q.J.R.'s life and should be rewarded by voiding the termination order. The appellant's argument, however, dissipates under the light of scrutiny.

To start with, Q.J.R. and his siblings were placed in the custody of CYS after the appellant neglected to perform essential parenting skills: inadequate food; inappropriate clothing; inappropriate caretaker; and absenting herself from the home. Further, once Q.J.R. was removed from the appellant's care (July 23, 1990) until a hearing on August 7, 1992 (wherein the goal of CYS was changed to adoption), the appellant had visited the child on sixteen occasions. Even then, some of the visits started late and ended early because of the appellant's tardiness. Additionally, there was "minimal cooperation" during the visits and the "contacts were not all that wonderful," so testified the CYS caseworker assigned to oversee the case.

Next, it is to be noted that six-month review hearings were scheduled to assess the appellant's progress in parenting and combating addiction from August 17, 1990, until August 7, 1992. At the hearings, the CYS caseworker reported that the appellant had been "discharged for non-compliance" from three drug and alcohol treatment programs, often showing "minimal involvement" in the treatment process. Also, the appellant never wanted CYS' help in finding appropriate hous-

ing, even though this resulted in the appellant staying with her mother, who likewise suffered from a severe drug and alcohol addiction.

Lastly, after May 7, 1992, the appellant maintained no contact with Q.J.R. in any fashion whatsoever. It was not until CYS filed its petition seeking involuntary termination in January of 1993 that the appellant contacted CYS to note her objection to the termination. At no time did the appellant inquire as to Q.J.R.'s health or welfare, nor were any gifts, cards or phone calls received from the appellant for the child. It was the appellant's contention that she left the Scranton area and travelled to Philadelphia and located a drug treatment program ("One Day At A Time") that satisfied her need for intense supervision, something she claims she was not receiving with the "out-patient" drug treatment programs in Lackawanna County.

The appellant testified that the Philadelphia program ranged from six to twelve months, the first two of which required a total "black-out" of relatives and family members to focus on oneself and not be distracted by matters which may have contributed to the addiction and risk the likelihood of non-recuperation. As a result, the appellant *elected* to keep her whereabouts a secret from CYS and her immediate family for almost fourteen months. Except, as noted earlier, after receiving notice of the petition to terminate, the appellant phoned CYS to advise that she was in Philadelphia, but she neglected to state the purpose of her stay or where she could be reached. No inquiry was made of Q.J.R. The appellant merely indicted that she objected to the petition to terminate and the goal of adoption.

At no time during the appellant's hiatus from the Scranton area did she communicate with CYS regarding Q.J.R.'s welfare, nor was any symbol (gifts or cards) of familial concern forwarded by the appellant to CYS for Q.J.R.'s benefit. This lack of concern was also evidenced by the appellant's admission that she was unaware of the name of Q.J.R.'s attending physician or the school district which oversaw his education.

■ It is true that where obstacles are raised as a barrier to a parent interacting with his/her child, the court will keep an open ear to listen to the efforts expended to hurdle the obstructions to parental bonding and performance of parental duties in rearing children. See *In re Shives,* 363 Pa.Super. 225, 525 A.2d 801, 803 (1987). Stated otherwise:

... [I]t is incumbent upon a court, before it terminates the rights of a noncustodial parent, to consider carefully the noncustodial parent's explanation, if any, for his or her apparent neglect. Only where the totality of the circumstances demonstrates clearly and convincingly that a parent has refused or failed to perform parental duties for a minimum period of six months may an order be entered terminating parental rights. *In re Santelia,* 318 Pa.Super. 413, 417, 465 A.2d 21, 23 (1983). The pertinent inquiry is not the degree of success a parent may have had in reaching the child, but whether, under the circumstances, the parent has utilized all available resources to preserve the parent-child relationship. *In re Adoption of Faith M., supra* 509 Pa. at 245, 501 A.3d at 1108.

*Id.* at 230, 525 A.2d at 803.

It is uncontroverted in this case that the appellant did not have a personal or even verbal contact with her son for a period covering almost fourteen months. During this same period, the appellant did not write, telephone or see her son. In explanation, the appellant offers her drug addiction as an insurmountable obstacle she has been attempting to hurdle as justification or excuse for cessation of parental responsibilities for the six-month statutory period required as a prerequisite to termination. If we condone such an apparent cavalier reason, we would fail to take into account the totality of the circumstances attendant to the appellant's efforts in making strides toward becoming a vital part of her child's life. *In re Adoption of Ostrowski,* 324 Pa.Super. 216, 471 A.2d 541 (1984).

We will not ascribe some talismanic quality to the appellant's efforts to rid herself of an insidious drug addiction, especially in light of the fact that the appellant was dismissed from three drug treatment programs for non-compliance with

their rules and regulations, and then absconding without notice to Philadelphia to seek treatment all the while never extending the courtesy to advise CYS or maintain contact with Q.J.R. during her fourteen-month odyssey to Philadelphia. This type of behavior is reflective of immaturity, self-centeredness and a character devoid of concern for the health and welfare of her child, Q.J.R.

The appellant admitted that her *main* concern was to overcome her addiction, never giving any consideration to the impact of her absence or lack of communication upon the child. Even the spiritual director at "One Day At A Time" indicated that it was merely *recommending* that admittees to the program not interact with their family members *if they were a cause of or contributed to the drug addiction.* First, there is no indication that the minor-child Q.J.R. either caused or contributed to the appellant's drug problem, nor is there any proof that indirect communication (either by letters or cards) with the child would have had a deleterious effect upon the appellant's efforts to control her addiction. Second, the effort expended by the appellant to contact CYS in Scranton to advise it of her whereabouts would have been minimal and reflective of a concern for her child had her presence been required for emergency purposes. She chose to distance herself from Q.J.R. for an inordinate period of time without advising anyone of her whereabouts or intentions regarding Q.J.R. This behavior would not be condoned in any parent, and it will not be sanctioned in someone dealing with a chemical dependency. The avenues available for the appellant to pursue in seeking to control her addiction did not justify distancing herself from Q.J.R. without notifying the authorities (CYS) where she could be contacted or merely the purpose of her absence. This cannot be condoned under the guise of seeking drug rehabilitation.

We find that the appellant's overall behavior, encompassing more than three years, is not indicative of one seeking to carryout her parental responsibilities. The appellant still had a responsibility to play an active and meaningful role in her child's life. She appears to have left that obligation at the

steps of the Philadelphia drug treatment door. Such behavior was not appropriate in this case and merely added to the justification found by the Master and affirmed by the court in terminating the appellant's rights to the minor-child, Q.J.R. No argument has been proffered to hold otherwise.

Order affirmed.

JOHNSON, J., concurs in the result of this opinion.