406 A.2d 1365

### In re BABY BOY ROBINSON also known as Lanny Jose Robinson, a Minor.

### Appeal of Pinky Mae WOOTEN.

Supreme Court of Pennsylvania.

Argued Sept. 24, 1979.
Decided Oct. 23, 1979.

refinement of the issues that the traditional appellate process is designed to provide.

Thomas C. Reed, Pittsburgh, for appellant.

Cheryl Allen Craig, Asst. County Sol., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION

LARSEN, Justice.

On June 22, 1977, appellee, the Child Welfare Services of Allegheny County, filed a petition in orphans' court seeking an involuntary termination of appellant Pinky Mae Wooten's parental rights in her son, Lanny Jose Robinson. Hearings were held and, by a decree entered on January 17, 1978, appellant's parental rights in the child were terminated. Exceptions were dismissed and this appeal followed.

Appellant's first contention is that there was insufficient evidence to support an involuntary termination of appellant's parental rights. This Court has held that

> [t]he findings of the orphans' court, supported by competent evidence, "must be sustained unless the court abused its discretion or committed an error of law". . . We must accept as true all evidence in the record supporting the findings of the court and reasonable inferences therefrom. . . . Conflicts in the testimony are to be resolved by the trier of fact, who is the sole judge of credibility. . . . This Court may not disturb a decree of the orphans' court based upon findings supported by the record unless the orphans' court applied an incorrect legal standard. *Adoption of S.H.*, 476 Pa. 608, 611, 383 A.2d 529, 530 (1978) (citations omitted).

Viewed under this standard, the record established that on January 5, 1969, appellant gave birth to Lanny Jose. On June 2, 1969, when the child was almost 6 months old, the

child came under the care of the Child Welfare Services (CWS); the child has remained in a foster home since his first year.

Since the child's placement in a foster home, appellant has allowed a number of substantial periods to pass without visiting her child. Between July, 1974 and October 4, 1977 (a 39-month period), appellant visited the child on only 5 occasions (October 17, 1974, December 18, 1975, August 27, 1976, January 25, 1977, and June 9, 1977). During this 39-month period, appellant allowed periods of 14 months (October 17, 1974 to December 18, 1975) and 8 months (December 18, 1975 to August 27, 1976) to elapse without visitation.

Appellant's 5 meetings with her child were scheduled by Kathryn Salvucci, appellant's caseworker during this period, who testified that whenever appellant requested a visit with her child, she (Salvucci) never failed to schedule such a meeting. In addition to scheduling the aforementioned 5 meetings, Salvucci, at the request of appellant, scheduled 2 meetings (in August, 1975 and July, 1977) which appellant failed to attend. Prior to each of these 2 meetings, appellant never informed Salvucci that she (appellant) would not attend said meetings.

Salvucci also testified that during the period that she was appellant's caseworker, appellant did not send cards, letters, or gifts to her child nor did she provide any financial support for her child.

Section 311(1) of the "Adoption Act" provides:

*The rights of a parent in regard to a child may be terminated* after a petition filed pursuant to Section 312, and a hearing held pursuant to Section 313, on the ground that:

(1) *The parent by conduct continuing for a period of at least six months either* has evidenced a settled purpose of relinquishing parental claims to a child, *or has refused or failed to perform parental duties.* Act of July 24, 1970, P.L. 620, No. 208, art. III, § 311, 1 P.S. § 311 (Supp.1964–78) (Emphasis provided).

This Court held in *In re Adoption of David C.*, 479 Pa. 1, 8, 387 A.2d 804, 807 (1978):

> "Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive and uninvolved interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. . . . This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. . . . Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.'" (citations omitted).

Given the fact that during a 39-month period, appellant visited her child on only 5 occasions, did not attend 2 other scheduled meetings with her child, did not send any cards, letters, or gifts to her child, and did not provide her child with any financial support, it is clear that the record supports the lower court's termination of appellant's parental rights.

Appellant further asserts that even though her child was in a foster home, "it is unrefuted" that she "express[ed] concern for her . . . [child] and remained in constant oral communication with both her . . . [child] and his guardians", citing an August 2, 1974 memorandum written by caseworker Salvucci. This memorandum stated that "[i]t should be noted that . . . [the child's] mother [appellant] is in constant touch with this agency and visists [sic] her son on a regular basis. There has been no laspe [sic] in her concern for . . . [the child] while he has resided in the . . . [foster] home." This memorandum has little (if any) relevance to the issue of whether appellant performed her parental duties; the memorandum was dated August 2, 1974, which was at the very beginning of the 39-month period (July, 1974 to October 4, 1977) that appellant did not perform her parental duties.

Assuming appellant's argument that her failure to provide financial support to her child was justified on the grounds that she was "disabled" and had "a home full of children", it is nevertheless clear that she could have taken "affirmative" steps to maintain the "parent-child" relationship in spite of her financial difficulties. In *In re Burns*, 474 Pa. 615, 626, 379 A.2d 535, 541 (1977), we stated:

> We do not believe, however, that . . . [a mother's] health, financial and emotional problems justified her failure to make any effort to perform her parental duties.
> . . . . Parental duty does not require the impossible, but may encompass that which is difficult and demanding. *A parent may not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult times.* (Emphasis provided).[1]

■ Appellant's second contention is that the lower court erred "in refusing to permit . . . [her] to introduce evidence favorable to her position". During appellant's cross-examination of caseworker Salvucci, appellant's counsel asked Salvucci whether she "had an opportunity to read" CWS caseworker Mary O'Hare's "dictation" regarding the child. Salvucci responded: "No, I have not read the record." Appellant's counsel then stated that he was going to read "notes" which he took from Mary O'Hare's "dictation" to ascertain whether Salvucci was "familiar" with same. Ap-

1. Appellant contends there was insufficient evidence to establish that she "evidenced a settled purpose to relinquish her parental rights". We need not discuss this claim since "parental rights may be forfeited for failure to perform parental duties for a six month period, *despite the absence of a settled purpose to relinquish parental claims.*" *In re Burns*, 474 Pa. 615, 624, 379 A.2d 535, 539 (1977) (Emphasis provided).

Further, since there was sufficient evidence to terminate parental rights under Section 311(1) of the Adoption Act, it is unnecessary to discuss appellant's argument that there was insufficient evidence to establish the termination of parental rights under Section 311(2) of the Act.

Finally, appellant's allegation that the CWS "deliberately sought to mislead . . . [her] concerning its intention to terminate her parental rights and sought to preclude visitation and contact" between appellant and her child is unsupported by any evidence.

pellee made an objection which the lower court sustained. At the hearings and in this appeal, appellant argued that the "proffered statement was made by an employee of . . . [CWS] and thus would have met the reliability requirement of the ["Uniform Business Records As Evidence] Act".[2] This argument is spurious; appellant's counsel was not attempting to introduce CWS records but rather his own "*notes*" which *he* (appellant's counsel) allegedly took from CWS records.

■ Appellant's third and final contention is that the lower court erred in permitting appellee to "introduce evidence which was properly excludable". Specifically, appellant objects to the testimony of CWS caseworker Elizabeth McComas Pugh and West Penn Hospital caseworker Joan Zekas on the grounds that at the hearings, they were permitted to read from "notes [which were] prepared from . . . unauthenticated records for use at" the hearings. Pugh's notes were taken from CWS records which she dictated when she handled appellant's case between 1970 and 1972 while Zekas' notes were taken from records which were compiled on appellant and two of her daughters when they used West Penn Hospital's facilities between 1969 and 1971. Assuming that the lower court should not have permitted this testimony, this error was harmless since the testimony concerned a period of time prior to the 39-month period (July, 1974 to October 4, 1977) that appellant did not perform her parental duties [3]; if this testimony was elimina-

---

2. "A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." Act of May 4, 1939, P.L. 42, No. 35, § 2, 28 P.S. § 91b. *See,* 42 Pa.C.S. § 6108 (1979 Pamphlet).

3. Appellant also objects to CWS caseworker Renette Oklejewicz's testimony on the grounds that she read from the child's discharge summary from Children's Hospital (where the child was a patient for a portion of his first year) and from CWS records. This testimony provided no evidence as to whether appellant performed her parental

ted from the record, the evidence would still support the lower court's termination of appellant's parental rights.[4]

Decree affirmed. Each party to pay own costs.

MANDERINO, J., filed a dissenting opinion in which NIX, J., joined.

MANDERINO, Justice, dissenting:

The majority today irreversibly terminates appellant's rights as a natural mother to Baby Boy R. The trial court's determination is upheld in spite of the failure to consider a totality of the circumstances as required by this Court; an error concerning the admissibility of evidence; and the fact that appellee deliberately concealed from appellant its plans to petition for a termination of parental rights. I dissent.

This Court has found that appellant failed to perform parental duties under Section 311(1) of the Adoption Act of July 24, 1970, P.L. 620, art. III, 1 P.S. § 311(1). Examining whether a parent has failed or refused to act in a manner which will preserve the parent-child relationship is a most subjective and difficult task and given the consequences of such, this Court has in the past stated this decision must be made in light of the totality of the circumstances after examining the individual situation. *In re Adoption of Orwick*, 464 Pa. 549, 347 A.2d 677 (1975). However, today the majority rather summarily permits termination "[g]iven the fact that during a 39-month period, appellant visited her child on only 5 occasions, did not attend 2 other scheduled meetings with her child, did not send any cards, letters or gifts to her child, and did not provide her child with any financial support" [page 1367]. Yet, the majority opinion,

duties during the aforementioned 39-month period (July, 1974 to October 4, 1977) and therefore, its elimination from the record would not effect the lower court's termination of appellant's parental rights.

4. In its opinion, the lower court held that "[t]he mother's counsel has presented a learned brief wherein he has called the court's attention to certain inadmissible testimony. . . . The inadmissible testimony can have *little or no effect* in this decision." (Emphasis provided).

trial court, and appellee all concede that appellant was disabled, had a total of six children and a very limited income. Indeed, the trial court recognized that appellant suffered from emotional and economic disabilities and yet refused to consider these as circumstances controlling appellant's behavior toward her child. Appellant did visit although because of her other problems this was not often. She did orally communicate with her child. Given her limited resources and other children, termination cannot be based upon lack of financial support or gifts. I am equally unpersuaded that grounds for termination exist because appellant failed to follow a middle class custom of sending greeting cards. Health, financial and emotional problems must be considered justification for failure to perform parental duties. *In re Burns,* 474 Pa. 615, 628, 379 A.2d 535, 542 (Manderino, J., dissenting).

The trial court admitted into evidence a highly prejudicial discharge summary from Children's Hospital. The majority finds no error since this testimony predates the 39-month period upon which it bases its affirmance of the termination. In effect, the majority is finding the admission of this evidence to be harmless error. The record in question is admitted by appellee to be an unauthenticated medical report charging "suspected" abuse or neglect. A reading of the trial judge's opinion as a whole does indicate that he was very much influenced by this inadmissible evidence, even though he states at one point in his opinion that he was not. Appellee argues it was introduced purely for historical purposes and the majority would have us believe a termination is clearly warranted even without this evidence. Both contentions are facetious.

Finally, the majority notes in a footnote that appellee did not deliberately *mislead* appellant as to its intentions to terminate her parental rights. However, it is clear from the record and appellee's brief that appellee did *conceal* from appellant its plans to petition for termination of parental rights in order that the foster parents could adopt. Appellee justifies this because it feared appellant would not voluntar-

ily agree and would take action to insure this did not happen to other children already placed by appellee. Although this Court has not imposed a legal obligation on a child welfare agency such as appellee, to assist parents to maintain the parent-child relationship, we have recognized that they should "offer education, training and encouragement," *In re W. M. III*, 482 Pa. 123, 393 A.2d 410, 412 (1978). Appellee did not merely fail to encourage the parent in this case. Can it be that we will now permit *concealment* by an agency to expedite a termination of parental rights?

Today's termination means that the child is "dead" so far as appellant is concerned. I cannot agree with the majority's value judgment that this child will grow up to be a better adult by being cut off forever from any ties with the natural mother. *In re William L.*, 477 Pa. 322, 369, 383 A.2d 1228, 1252 (1978) (Manderino, J., dissenting).

Mr. Justice NIX joins in this dissenting opinion.