J-S38018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: P.S.-Q.S.-L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 940 WDA 2021 |

Appeal from the Decree Entered June 4, 2021
In the Court of Common Pleas of Beaver County Orphans' Court at
No(s): 3003-2021,
CP-04-DP-0000014-2020

| | | |
|---|---|---|
| IN THE INTEREST OF M.D.V.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 941 WDA 2021 |

Appeal from the Decree Entered June 4, 2021
In the Court of Common Pleas of Beaver County Orphans' Court at
No(s): 3004-2021,
CP-04-DP-0000013-2020

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                **FILED: JANUARY 25, 2022**

D.L. ("Mother") appeals from the Decrees entered June 4, 2021, in the

Court of Common Pleas of Beaver County, which involuntarily terminated her

---

[*] Retired Senior Judge assigned to the Superior Court.

parental rights to her sons, M.D.V.M., born in June 2016, and P.S.-Q.S.-L., born in February 2020 (collectively, "Children").[1]  Mother assails the evidence underlying the Orphans' Court's decision, but we conclude the record supports the court's findings and affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

We take the following factual and procedural history from the Orphans' Court's opinion and our review of the record.  Beaver County Children and Youth Services ("CYS") has a long history of involvement with Mother dating back to 2011.  Mother had eight children at the time of these proceedings and was pregnant with her ninth.  Significantly, the record indicates that at least the last four of Mother's children were born with drugs or alcohol in their system, including M.D.V.M., his two younger siblings who are not involved in this appeal, and P.S.-Q.S.-L.  CYS began providing general protective services for the family after M.D.V.M.'s birth in June 2016, but Mother continued to abuse substances.

CYS obtained custody of Children after P.S.-Q.S.-L.'s birth in February 2020.  P.S.-Q.S.-L. was born with cocaine and marijuana in his system, and Mother refused to attend inpatient substance abuse treatment.  Mother also suffered from mental health concerns and lacked stable housing.  The Juvenile Court issued verbal emergency protective custody orders on March 16, 2020,

---

[1] The Orphans' Court also entered a Decree terminating the parental rights of M.D.V.M.'s father, J.B., involuntarily.  J.B. did not appeal.  P.S.-Q.S.-L.'s father is deceased.

which removed Children from Mother's care, and written orders dated March 17, 2020, which confirmed the verbal orders. A shelter care hearing occurred on March 17, 2020, and the court ordered that continued placement outside of Mother's care was necessary. The matter proceeded to an adjudication and disposition hearing on April 13, 2020, and the court entered orders dated April 15, 2020, adjudicating Children dependent. The court directed once again that Children would remain placed outside of Mother's care and designated their permanent placement goals as return to parent or guardian.[2] At the time of the hearing, M.D.V.M. was three-and-a-half years old, and P.S.-Q.S.-L. was two months old. Although Children initially resided in separate foster homes, M.D.V.M. went to live in the same kinship foster home as P.S.-Q.S.-L. in June 2020, and they have remained there together ever since.

After Children's adjudications of dependency, Mother made little effort to reunify with them. Her reunification goals included obtaining substance abuse and mental health treatment and maintaining stable housing. Mother attended inpatient substance abuse treatment beginning on March 20, 2020, but she left against medical advice on April 4, 2020. Her only substance abuse treatment after that was a twelve-hour relapse prevention program in June 2020. Mother repeatedly failed to comply with drug screens, failed to attend mental health treatment consistently, and moved from place to place. She

---

[2] Mother appealed the orders, and this Court affirmed on October 15, 2020. *See In the Interest of P.L.*, 241 A.3d 428 (Pa. Super. 2020) (unpublished memorandum).

was also incarcerated briefly in July 2020. Critically, Mother failed to attend available supervised visitation and had minimal contact with Children. Mother visited Children informally through their foster mother in June 2020, and then visited them only once during the next seven months, which was another informal visit in December 2020. Mother also had phone contact with Children approximately once per month.

The Juvenile Court conducted a permanency review hearing on January 5, 2021. Because of Mother's noncompliance, CYS requested that the court change Children's goals from return to parent or guardian to adoption. The court entered orders changing Children's goals dated January 6, 2020.[3] Only after the court entered its goal change orders did Mother's compliance begin to improve, in that she obtained substance abuse treatment and reached out to Children's foster mother for more consistent visits with Children.

On January 19, 2021, CYS filed Petitions to terminate Mother's parental rights to Children involuntarily. The Orphans' Court[4] conducted a hearing on the Petitions on March 23, 2021, at which time M.D.V.M. was four-and-a-half years old and P.S.-Q.S.-L. was one year old. At the hearing, CYS presented testimony from Mother, as on cross-examination; Children's foster mother,

_____

[3] Mother appealed a second time, and this Court affirmed the goal change orders on July 16, 2021. *See In the Interest of P.S.-Q.S.-L.*, 260 A.3d 148 (Pa. Super. 2021) (unpublished memorandum).

[4] The Honorable Mitchell Shahen served as the Juvenile Court and Orphans' Court in this matter.

Z.S.; and CYS caseworker, Susan Willy.[5]  On June 4, 2021, the court entered Decrees terminating Mother's parental rights to Children involuntarily, as well as Findings of Fact, citing 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b).

Mother failed to appeal within the requisite thirty days.  *See* Pa.R.A.P. 903(a).  On July 7, 2021, Mother filed a Petition for permission to appeal *nunc pro tunc* in this Court, averring she miscalculated the end of the appeal period by one day.  This Court entered an order on July 20, 2021, dismissing Mother's petition but explaining she could request permission to appeal in the Orphans' Court.  Mother complied, and the Orphans' Court granted her permission to appeal *nunc pro tunc* by Order entered August 4, 2021.  Mother filed Notices of Appeal, along with Concise Statements of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i), that same day.  CYS filed an application to consolidate Mother's appeals in this Court on September 1, 2021, and we entered an order granting consolidation on September 16, 2021.[6]

---

[5] Mother was represented by counsel during the termination proceedings.  A single guardian *ad litem* represented both Children during the proceedings, while the Court appointed separate legal counsel for M.D.V.M.

[6] Mother filed two Notices of Appeal *nunc pro tunc*, with each Notice of Appeal corresponding to one of the two Children involved in this appeal and included the docket numbers from both Children's adoption and dependency matters. This Court filed orders directing Mother to show cause as to why these appeals should not be quashed for failing to comply with Pa.R.A.P. 341, as interpreted in ***Commonwealth v. Walker***, 185 A.3d 969, 976-77 (Pa. 2018). Mother responded that she intended only to appeal from the termination decrees, as evidenced by her annexation of those decrees to her notices of appeal.

Mother raises a single issue for our review: "Whether the [Orphans' C]ourt erred in finding a basis to terminate Mother's parental rights under 23 Pa.C.S. [§] 2511(a)(1), 2511(a)(2), and 2511(a)(5) when [CYS] failed to prove these grounds by clear and convincing evidence[?]"  Mother's Br. at 5.[7]

**Standard and Scope of Review**

When reviewing a Decree involuntarily terminating parental rights, this Court must accept the findings of fact and credibility determinations of the Orphans' Court if the record supports them.  ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).  If the record supports the court's factual findings, we must then consider whether the court committed an error of law or abused its discretion.  ***Id.***  Where the competent record evidence supports the court's findings, we

---

Our Supreme Court has recently held that an appellate court may take appropriate action to allow for corrective action where a timely-filed notice of appeal contains an error. ***See Commonwealth v. Young***, ___ A.3d ___, 2021 WL 6062566 (Pa. filed Dec. 22, 2021) (applying Pa.R.A.P. 902 to allow correction of error to notices of appeal). In light of Mother's response to the rules to show cause, and the fact that she has already appealed the dependency determinations, we need not remand for the filing of amended notices of appeal or other corrective action. We, thus, address the merits of Mother's appeals.

[7] In the argument portion of her brief, Mother also asserts a challenge to the termination of her parental rights pursuant to 23 Pa.C.S. § 2511(b). Mother's Br. at 22. However, Mother failed to include that challenge in her statement of questions involved or her Concise Statement of Errors Complained of on Appeal.  Thus, Mother waived any claim regarding Section 2511(b).  ***See In re M.Z.T.M.W.***, 163 A.3d 462, 466 (Pa. Super. 2017) (explaining that this Court will not review an appellant's claim unless it is included in the statement of questions involved and Concise Statement).

must affirm the termination Decree even if the record could support a different result. ***In re Adoption of Atencio****,* 650 A.2d 1064, 1066 (Pa. 1994).

Critically, the Orphans' Court "is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.****,* 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted). We defer to the Orphans' Court because it often has "first-hand observations of the parties spanning multiple hearings." ***In re T.S.M.****,* ***supra*** at 267 (citations and quotation marks omitted). It is important to remain mindful that courts "cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care." ***In re Adoption of R.J.S.****,* 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

The Adoption Act requires that the Orphans' Court conduct a bifurcated analysis when considering a Petition to terminate parental rights involuntarily. ***See*** 23 Pa.C.S. § 2511(a) and (b). The court first focuses on the conduct of the parent, and if the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), the court must then analyze whether termination of parental rights will serve the needs and welfare of the child pursuant to Section 2511(b). The court must examine the existence of the child's bond

with his or her parent, if any, and the potential effect on the child of severing that bond. **In re L.M.**, 923 A.2d 505, 511 (Pa. Super. 2007). As we have explained, "a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." **In re B.,N.M.**, 856 A.2d 847, 856 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citation omitted).

While the Orphans' Court here found that CYS met its burden of proof pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b), we need only agree with the court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination of parental rights. **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

**Termination Pursuant to Section 2511(a)(1)**

We first conclude the Orphans' Court properly exercised its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(1). Section 2511(a)(1) provides for termination where the petitioner establishes by clear and convincing evidence that "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1); **In re Adoption of C.M.**, 255 A.3d 343, 358 (Pa. 2021) (citations omitted).

- 8 -

While the Adoption Act does not define the term "parental duties," our courts have explained that parents must exert themselves to maintain a place of importance in their children's lives. *Id.* at 364 (quoting ***In re Adoption of R.W.G.***, 431 A.2d 274, 276 (Pa. 1981)). "[C]ommunication and association are essential to the performance of parental duty[,]" and a parent may not preserve his or her rights by waiting for a more convenient time to perform parental responsibilities while others attend to a child's physical and emotional needs. *Id.* (citations and quotation marks omitted). Moreover, a parent must "'exercise reasonable firmness'" in resisting any obstacles that may prevent him or her from maintaining the parent-child relationship. *Id.* (quoting ***In re Adoption of S.P.***, 47 A.3d 817, 828 (Pa. 2012)). If the evidence establishes that a parent has failed to perform parental duties in the six months preceding the filing of the Petition, the Orphans' Court "must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination [of parental rights]." *Id.* (quoting ***In re Orwick's Adoption***, 347 A.2d 677, 680 (Pa. 1975)).

Here, Mother acknowledges she failed to maintain contact with Children. Mother's Brief at 15-16. She contends her lack of contact resulted from her mental health issues and "fear of doing something stupid," and she complains that CYS failed to accommodate these circumstances. *Id.* at 15-17. Mother asserts she had a "light bulb [*sic*] moment of fear" when the Juvenile Court changed Children's goals to adoption in January 2021 and thereafter increased

her contact with Children and their foster mother. *Id.* Mother also attempts to defend her lack of contact with Children by arguing she was performing her parental duties by not having contact with them. *Id.* at 16-17. She proposes that she "engaged in her parental duty" by relying on Children's foster mother to care for them and by doing so protected them "from her own shortcomings." *Id.*

The Orphans' Court rejected Mother's explanation, finding that she failed to attend visits with Children and "completely put the [c]hildren out of her life" from at least June 2020 to January 2021. Orphans' Court Opinion, 9/1/21, at 25-26. Although the court recognized Mother later increased her contact with Children, it dismissed these belated efforts as merely "an effort to change the impact of the pending litigation." *Id.* at 26. The court observed that Mother showed no interest in addressing Children's needs during the limited contact she did have with them, as she did not even bother to feed them or change P.S.-Q.S.-L.'s diaper. *Id.*

The Orphans' Court further found Mother refused to accept responsibility for Children's placement in foster care and failed to cooperate with CYS. *Id.* Specifically, the court observed that Mother had not completed recommended substance abuse treatment or attended mental health treatment consistently. *Id.* The court concluded Mother continued to place her needs above those of

Children and had not made the strides necessary to reunify with them despite significant time and available services. *Id.* at 26-27.[8]

Our review of the record supports the Orphans' Court's conclusion that Mother refused or failed to perform parental duties in the six months preceding the filing of the termination Petitions. Strikingly, the testimony reveals Mother did not take advantage of supervised visitation. Mother visited with Children informally through Children's foster mother in June 2020 and then did not visit them again until another informal visit in December 2020.[9] N.T., 3/23/21, at 44-45, 48-49, 113. Mother did not visit Children after that until she arranged additional informal visits in January 2021, near the time CYS filed its Petitions to terminate her parental rights on January 19, 2021. *Id.* at 43, 48-49, 56,

_____

[8] The Orphans' court also concluded that severing Mother's parental rights to Children would not adversely affect the Children's wellbeing. Orphans' Court Opinion, 9/1/21, at 33. The court observed that M.D.V.M. had only a "minimal bond" with Mother; and P.S.-Q.S.-L has had almost no contact with Mother throughout his life as he has lived in foster care since shortly after birth. *Id.* at 3-4, 10-13, 25-29. The court found both Children thrived in their foster home, despite Mother's lengthy absence from their lives, and that they shared a strong bond with their pre-adoptive foster mother, who provided them a nurturing, safe, and supportive environment. *Id.* at 33-34. Children did not look to Mother as a source of support and, as such, the court concluded terminating Mother's parental rights would have no adverse effect on them and, in fact, will serve the Children's best interests by providing them with a nurturing, safe, and supportive home. *Id.* at 34.

[9] CYS offered Mother video visits at the start of the dependency proceeding due to the COVID-19 pandemic. N.T., 3/23/21, at 45, 59-61. It is not entirely clear from the record whether Mother attended any of these video visits.

122-23. Mother also had phone contact with Children, but this occurred only once per month, approximately, until January 2021. *Id.* at 114; Exhibit D.

Further, it was within the Orphans' Court's discretion to reject Mother's explanation for her refusal or failure. Mother's claim, that her mental health issues excused her lack of contact with Children, and that she performed her parental duties by leaving Children in the care of their foster mother, is plainly contrary to our law, which requires that a parent take affirmative steps to maintain a relationship with his or her child. *See In re Adoption of C.M.*, *supra* at 364. Accordingly, Mother is not entitled to relief.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/2022